## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Church Mutual Insurance Company, now known as Church Mutual Insurance Company, S.I., | Case No.: 21 cv 3752 |
| Plaintiff, | **CHURCH MUTUAL INSURANCE COMPANY, NOW KNOWN AS CHURCH MUTUAL INSURANCE COMPANY S.I.'S COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL** |
| v. | |
| Prairie Village Supportive Living, LLC, a/k/a Eagle's View Supportive Living, and Brian Field, | |
| Defendants. | |

Plaintiff Church Mutual Insurance Company, now known as Church Mutual Insurance Company. S.I. ("Church Mutual") for its Complaint for Declaratory Judgment states as follows:

### NATURE OF THE ACTION

1.      This is an action brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. Church Mutual seeks a determination of the parties' rights and obligations under insurance policies issued by Church Mutual with respect to a prospective lawsuit captioned *Brian Field, individually and on behalf of all others similarly situated v. Prairie Village Supportive Living, LLC a/k/a Eagle's View Supportive Living*, venued in the Circuit Court of Champaign County, Illinois ("the prospective underlying lawsuit"). A copy of the

1

draft complaint in the prospective underlying lawsuit is attached as **Exhibit 1**.

## PARTIES

2.        Plaintiff Church Mutual is a Wisconsin citizen incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin.

3.        Defendant Prairie Village Supportive Living LLC, a/k/a Eagle's View Supportive Living ("Prairie"), is an Illinois limited liability company organized under the laws of the State of Illinois, with its principal place of business in Lincolnwood, Illinois, and upon information and belief, and pursuant to examination of publicly available documents from the Illinois Secretary of State including the Articles of Organization and most recent Annual Report for this entity, **attached as Exhibits 2 and 3**, its members are citizens of the State of Illinois. Prairie is seeking coverage under insurance policies that Church Mutual issued.

4.        Based on information and belief, Defendant Brian Field ("Field") is a resident and citizen of Illinois, and is the plaintiff in the prospective underlying lawsuit.

## JURISDICTION AND VENUE

5.        This Court has jurisdiction over this action under 28 U.S.C. § 1332 (a) (1), because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is a dispute between citizens of different states.

6.        Venue is proper in this District under 28 U.S.C. § 1391(b) (1) because Prairie's principal office is in this District, and upon information and belief all defendants

2

are residents of this state.

## THE UNDERLYING CLAIMS

7.      This action addresses insurance coverage for claims  by Field against Prairie

for alleged violations of the Illinois Biometric Information Privacy Act (BIPA), 740 Ill.

Comp. Stat. § 14/1, *et seq*. as first articulated in a letter dated January 11, 2021 which

attached a prospective class action complaint (the "underlying claims").

8.      In particular, Field first notified Prairie via letter dated January 11, 2021 of

his claim that Prairie violated BIPA, 740 Ill. Comp. Stat. § 14/1, *et seq*. Field specifically

claimed that during his employment with Prairie, Prairie required him to use a fingerprint

scanner to clock in and clock out, but did not require Field to sign a waiver and did not obtain

a written release from Field before it collected biometric data.

9.      Field also claimed in the January 11, 2021 letter that in violation of BIPA

Prairie failed to adopt and provide its employees with a written, publicly available policy

identifying its retention schedule and guidelines for permanently destroying its employees'

biometric information.

10.     Field advised Prairie in the January 11, 2021 letter that he was prepared to

file a class action complaint against Prairie, seeking, *inter alia*, liquidated damages for each

of Prairie's negligent violations of BIPA pursuant to 740 Ill. Comp. Stat. § 14/20 (1), and

reasonable attorneys fees and costs and expenses pursuant to 740 Ill. Comp. Stat. § 14/20/3.

11.     Field's January 11, 2021 letter attached a copy of a draft class action

3

complaint, attached hereto as **Exhibit 1** and referred to herein as the prospective underlying lawsuit**,** which to date has not been filed or served.

12.     The complaint in the prospective underlying lawsuit alleges that Field "worked for Prairie in Illinois through 2019," that as an employee, Prairie required him to scan his fingerprint daily so that it could be used as an authentication method to track time, and that Prairie stored Field's fingerprint data in its databases.

13.     The prospective underlying lawsuit alleges that when employees first begin their jobs at Prairie, they are required to scan their fingerprints in its biometric time tracking system as a means of authentication, to "punch in," and "punch out," and that the fingerprints are enrolled in Prairie's fingerprint database.

14.     The prospective underlying lawsuit alleges that Prairie never informed Field of any biometric data retention policy it developed, or whether it will ever permanently delete fingerprints, and never asked Field to sign a written release allowing Prairie to collect or store fingerprints.

15.     The prospective underlying lawsuit alleges that Prairie failed to provide its employees with a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting their fingerprints is no longer relevant, and as such an employee who leaves the company does so without any knowledge of when their biometric identifiers will be removed from Prairie databases, if at all.

16.     The prospective underlying lawsuit alleges that Prairie failed to inform its employees of the complete purposes for which it collects their sensitive biometric data, "or to whom it is disclosed if at all."

17.     The prospective underlying lawsuit alleges Prairie collected, captured, or otherwise obtained biometric identifiers or biometric information from "at least hundreds of employees," and seeks certification of a class of individuals consisting of:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Defendant while residing in Illinois.

18.     The prospective underlying lawsuit asserts one cause of action, for violation of BIPA, 740 Ill. Comp. Stat. § 14/1, *et seq,*

19.     The prospective underlying lawsuit alleges that Prairie violated 740 Ill. Comp. Stat. § 14/15(a), because it failed to institute, maintain, and adhere to a written, publicly-available retention schedule, and failed to establish guidelines for permanent deletion of biometric data.

20.     The prospective underlying lawsuit also alleges Prairie violated 740 Ill. Comp. Stat. § 14/15(b) because it failed to inform employees that a biometric identifier or biometric information is being collected or stored, failed to inform employees in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used, and failed to obtain a written release from its employees, as the subjects of the biometric identifier or biometric information.

5

21.     The prospective underlying lawsuit alleges that by collecting, storing, and using the biometric identifiers and biometric information of Field and the members of the Class in violation of 740 Ill. Comp. Stat. § 14/1, *et seq,*, Prairie violated the rights to privacy of Field and the members of the Class.

22.     The prospective underlying lawsuit seeks injunctive and equitable relief as necessary to protect the interests of Field and the Class by requiring Prairie to comply with BIPA's requirements for collection, storage, and use of biometric identifier and biometric information; seeks liquidated damages for each of Prairie's violations of BIPA under 740 Ill. Comp. Stat. § 14/20; and asks for attorney fees, costs, and interest.

## **INSURANCE POLICIES**

23.     Church Mutual issued four insurance policies (collectively, "the Policies") to Prairie:

A.     Policy Number 0331463-02-104627 (policy period 4/1/18 to 4/1/19) ("2018-2019 Policy") ; a certified copy of which is attached as **Exhibit 4;**

B.     Policy Number 0331463-02-213508 (policy period 4/1/19 – 4/1/20) ("2019-2020 Policy"), a certified copy of which is attached as **Exhibit 5;**

C.     Policy Number 0331463-02-104136 (policy period 4/1/20 – 4/1/21) ("2020-2021 Policy"), a certified copy of which is attached as **Exhibit 6; and**

D.     Policy Number 0331463-02-221611 (policy period 4/1/21 – 4/1/22) ("2021-2022 Policy"), a certified copy of which is attached as **Exhibit 7.**

6

**EPL Coverage**

24.     The 2021-2022 Policy, the 2020-2021 Policy, the 2019-2020 Policy, and the 2018-2019 Policy each contain Employment Practices Liability Coverage (EPL Coverage). Because the EPL Coverage is claims-made coverage, and because Field first claimed Prairie violated BIPA in his letter to Prairie dated January 11, 2021, only the 2020-2021 Policy's EPL Coverage may potentially be relevant.

25.     The EPL Coverage has an aggregate limit of insurance of $1,000,000, subject to a $5,000 retention.

26.     The 2020-2021 Policy states on top of page one of Form A 520 (1-17) of the EPL Coverage that the only relevant coverage is the EPL Coverage: "Except for the insurance provided by this coverage form, the policy to which this coverage form is attached does not apply to any claim or 'suit' seeking damages arising out of any 'wrongful employment practice.'"

27.      The EPL Coverage states that Church Mutual will pay for "'loss' arising from any claim or claims because of injury arising out of a 'wrongful employment practice' to which this insurance applies," but has "no duty to defend the insured against any 'suit' seeking payment for 'loss' to which this insurance does not apply."

28.     The EPL Coverage defines "wrongful employment practice," in relevant part, as "any actual or alleged … [e]mployment related … invasion of privacy."

7

29.     The EPL Coverage defines "loss" as "damages, monetary settlement amounts, and 'defense expenses' incurred in the defense of a claim or 'suit'. 'Loss' does not include fines, taxes, penalties, nonmonetary damages, injunctive relief, or declaratory relief."

30.     The EPL Coverage's insuring agreement also contains a Retroactive Date provision, stating that the coverage applies to "loss" because of injury only if "[t]he 'wrongful employment practice' did not occur before the Retroactive Date, if any, shown in the Declarations Page or after the end of the policy period." The 2020-2021 Policy's Declarations Page correspondingly provides that EPL Coverage "does not apply to injury that arises out of a 'wrongful employment practice' which occurs before the retroactive date … shown below": 08/31/15.

31.     The EPL Coverage contains the following exclusions:

**2.  Exclusions**

This insurance does not apply to:
* * *
**d.  Violation of Laws Applicable to Employers**

Any claim based on, attributable to, or arising out of:

(1) The Employee Retirement Income Security Act of 1974, Public Law 93-406, and any amendments to that law;

(2) Any state, local, common, or federal law that is similar to Public Law 93-406 or

(3) Any claim based on, attributable to, or arising out of any violation of any insured's responsibilities or duties required by any other federal, state, or local statutes, rules, or regulations, and any rules or

8

regulations promulgated therefor or amendments thereto. However this exclusion does not apply to: Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Pregnancy Discrimination Act of 1978, the Immigration Reform and Control Act of 1986, the Family and Medical Leave Act of 1993, and the Genetic Information Nondiscrimination Act of 2008 or to any rules or regulations promulgated under any of the foregoing and amendments thereto or any similar provisions of any federal, state, or local law.

(4) This exclusion also applies to any rules or regulations promulgated under any of the foregoing and amendments thereto or any similar provisions of any federal, state, or local law.

* * *

**j. Dishonest, Criminal or Fraudulent Acts**

Any claim based on, attributable to, or arising out of any actual or alleged dishonest, criminal, or fraudulent acts, or the willful failure to comply with any law or any governmental or administrative order, or regulation relating to employment practices by or with the insured's consent. Willful means acting with intentional or reckless disregard of such laws or employment related orders or regulations.

### Senior Living Facility Professional Liability Coverage

32.      The 2021-2022 Policy, the 2020-2021 Policy, the 2019-2020 Policy and the 2018-2019 Policy each contain Senior Living Facility Professional Liability Coverage, whose insuring agreement states that it applies to injury "caused by a 'professional health care incident'" and the "'professional health care incident' did not occur before the Retroactive Date shown in the Declarations Page." Because the Senior Living Facility Professional Liability Coverage is claims-made coverage, and because Field first claimed Prairie violated BIPA in his letter to Prairie dated January 11, 2021, only the 2020-2021 Policy's Senior

9

Living Facility Professional Liability Coverage is potentially relevant.

33.     The Senior Living Facility Professional Liability Coverage has an Each Claim limit of insurance of $1,000,000, and an aggregate limit of insurance of $3,000,000.

34.     The Senior Living Facility Professional Liability Coverage contains the following definitions:

**F.     DEFINITIONS**

5.     "Professional health care incident" means:

a.     Any act, error, omission or failure:

(1)     In the furnishing of "professional health care services." This includes furnishing of food, beverages, medications or appliances in connection with such services;

(2)     In the handling of deceased human bodies;

(3)     Arising out of service by any persons as members of a formal accreditation, standards review or similar board of the Named Insured or as a person who executes the duties of such board.

b.     Failure to comply with any right of a resident under any state or federal law regulating you as a resident health care facility.

c.     Failure to protect any resident from undue influence by an insured when such undue influence is to the personal detriment of the resident.

* * *

7.     "Professional health care services" means your professional medical, nursing, cosmetic, social, and similar professional services that relate to the care of your residents.

10

35.     The Senior Living Facility Professional Liability Coverage contains the following exclusion:

2.     Exclusions.

This insurance does not apply to:
* * *
e.     Injury to:

(1)     An employee of the insured arising out of and in the course of employment by the insured ….

This exclusion applies:

(1)     Whether the insured may be liable as an employer or in any other capacity; ….”

* * *

## General Liability Coverage

36.     The 2021-2022 Policy, the 2020-2021 Policy, the 2019-2020 Policy, and the 2018-2019 Policy each also contain General Liability Coverage (GL Coverage), which includes (1) Bodily Injury and Property Damage Liability Coverage and (2) Personal and Advertising Injury Liability Coverage.

37.     The Bodily Injury and Property Damage Liability Coverage has an Each Occurrence Limit of $1,000,000, and an aggregate limit of $3,000,000.

38.     The Bodily Injury and Property Damage Liability Coverage's insuring agreement under each of the Policies states that Church Mutual "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property

11

damage' to which this insurance applies," but Church Mutual has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

39.     The Bodily Injury and Property Damage Liability Coverage's insuring agreement of each of the Policies also states that it applies only if the "bodily injury" or "property damage" is caused by an "occurrence," and the "bodily injury" or "property damage" occurs during the policy period.

40.     The Bodily Injury and Property Damage Liability Coverage under each of the Policies defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time"; it defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured"; and it defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

41.     The Bodily Injury and Property Damage Liability Coverage under each of the Policies contains the following exclusions:

2.     Exclusions.

This insurance does not apply to:

a.     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured….
* * *

12

  e.  "Bodily injury" to

    (1)  An "employee" of the insured arising out of and in the course of:

      (a)  Employment by the insured; or

      (b)  Performing duties related to the conduct of the insured's business ….

    This Exclusion applies:

    (1)  Whether the insured may be liable as an employer or in any other capacity; ….

  f.  "Bodily injury" or "property damage" that arises out of any:
  * * *

    (3)  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions;

    (4)  Consequential "bodily injury" as a result of f.(1), f.(2), or f.(3) above.

    This exclusion applies whether the insured is liable either as an employer or in any other capacity ….

42.  The Personal and Advertising Injury Liability Coverage has a limit of insurance of $1,000,000.

43.  The Personal and Advertising Injury Liability Coverage's insuring agreement under each of the Policies states that Church Mutual "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies," but there is "no duty to defend the

13

insured against any 'suit' seeking damages for 'personal injury' or 'advertising injury' to which this insurance does not apply."

44.     The Personal and Advertising Injury Liability Coverage under each of the Policies applies "only if the offense was committed … during the policy period."

45.     The Personal and Advertising Injury Liability Coverage under each of the Policies defines "advertising injury" as "Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;" "Oral or written publication of material that violates a person's right of privacy;" "Misappropriation of advertising ideas or style of doing business;" or "Infringement of copyright, title, or slogan."

46.     The Personal and Advertising Injury Liability Coverage under each of the Policies defines "personal injury" as "False arrest, detention, or imprisonment;" "Malicious prosecution;" "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, unless such offense is alleged against an insured by an 'Affiliated Entity';" "Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services, unless such offense is alleged against an insured by an 'Affiliated Entity';" or "Oral or written publication of material that violates a person's right of privacy."

47.     The Personal and Advertising Injury Liability Coverage under each of the

Policies contains the following exclusions:

2.     Exclusions.

This insurance does not apply to:

a.     "Personal injury" or "advertising injury":
* * *

     (2)     Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;
* * *

c.     "Personal injury" to:

     (1)     An employee of the insured if it occurs in the course of employment by the insured; ….

This exclusion applies where the insured is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third party for damages arising out of paragraph c.(1) or c.(2) above.
* * *

e.     "Personal injury" that arises out of any:
* * *

     (3)     Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, sexual misconduct, or other employment-related practices, policies, acts, or omissions;

     (4)     Consequential "personal injury" as a result of e.(1), e.(2), or e.(3) above.

This exclusion applies where the insured is liable either as an employer or in any other capacity ….

48.     Each of the Policies contain the following exclusions on Form A 2049 (10-16):

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

### EXCLUSION – CYBER LIABILITY

This endorsement modifies insurance provided under the General Liability Coverage Part.

* * *

**A.      EXCLUSION – CYBER LIABILITY**

This insurance does not apply to any of the following:

* * *

**2.   Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

**a.**      Damages arising out of:

**(1)**      Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, health information, or any other type of nonpublic information;

* * *

**b.**      "Personal injury" or "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information, or any other type of nonpublic information.

* * *

**3.   Recording and Distribution of Material or Information in Violation of Law**

"Bodily injury", "property damage", "personal injury", or "advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

16

* * *

a. The Telephone Consumer Protection Act (TCPA) including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003 including any amendment of or addition to such law;

c. The Fair Credit Reporting Act (FCRA) including any amendment of or addition to such law, including the fair and Accurate Credit Transactions Act (FACTA); or

d. Any federal, state, or local statute, ordinance, or regulation, other than the TCPA, CAN-SPAM Act of 2003, or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information.

**4. Knowing Violation of Rights of Another**

"Personal injury" or "advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury" or "advertising injury".

* * *

## **Legal Defense Coverage**

49.     The 2021-2022 Policy, the 2020-2021 Policy, the 2019-2020 Policy and the 2018-2019 Policy also contain Legal Defense Coverage.

50.     The Legal Defense Coverage has an Each Defensible Incident limit of insurance of $5,000, and an aggregate limit of insurance of $15,000.

51.     The Legal Defense Coverage's insuring agreement under each of the Policies states:

17

A.   **LEGAL DEFENSE COVERAGE**

    1.   **Insuring Agreement**

       We will pay "defense costs", incurred by any insured, that result from a "suit" to which this insurance applies. This insurance applies to these "defense costs" only if:

       * * *

       b.   The "suit" results from a "defensible incident" that occurs during the policy period.

       No other obligation or liability to perform acts or services is covered.

52.    The Legal Defense Coverage under each of the Policies defines "defensible incident" as "any acts, omissions or failures of any insured," but does not include "[a]ny deliberate acts, omissions, or failures for purposes of causing a 'suit' to be filed against you."

53.    The Legal Defense Coverage under each of the Policies contains the following exclusions:

    2.   **Exclusions**

       This insurance does not apply:

       a.   To any "defense costs" incurred because of:

          (1)   "Bodily injury";

          (2)   "Personal injury";

          (3)   "Advertising injury";

\* \* \*

(6)    "Property damage";

\* \* \*

(8)    Any class action "suit";

\* \* \*

c.    To any damages.

\* \* \*

## CLAIM FOR DECLARATORY JUDGMENT

54.    Church Mutual realleges and incorporates herein the preceding paragraphs as though fully set forth in this paragraph.

55.    The Policies are subject to all of their terms, conditions, limitations, and exclusions.

56.    Based on the policy language of each of the Policies and based on applicable law, there is no coverage under any of the Policies with respect to the underlying claims articulated in the prospective underlying lawsuit. Church Mutual seeks a declaration that there is no coverage under the Policies with respect to the underlying claims articulated in the prospective underlying lawsuit, and that Church Mutual has no duty to defend and no duty to indemnify Prairie with respect to such claims.

57.    An actual and justiciable controversy exists between the parties with respect to the coverage available under the Policies with respect to the underlying claims articulated in the prospective underlying lawsuit brought by Field against Prairie, whether Church Mutual has any duty to defend and any duty to indemnify with respect to such claims, and the

19

parties' respective rights, duties, and obligations under those Policies regarding those claims.

58.     Based on the foregoing, Church Mutual requests that the Court declare that the Policies do not provide coverage for the underlying claims articulated in the prospective underlying lawsuit and that Church Mutual has no duty to defend or indemnify Prairie with respect to such claims.

59.     Declaratory relief will resolve the dispute between the parties regarding the issues related to coverage under the Policies for the underlying claims articulated in the prospective underlying lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Church Mutual requests judgment in its favor as follows:

1.     For a declaration that the Policies do not provide coverage for Prairie with respect to the underlying claims articulated in the prospective underlying lawsuit;

2.     For a declaration that Church Mutual has no duty to defend Prairie or pay its defense expenses in connection with the underlying claims articulated in the prospective underlying lawsuit;

3.     For a declaration that Church Mutual has no duty to indemnify Prairie or pay any judgment or settlement entered against it in the underlying claims articulated in the prospective underlying lawsuit;

4.     For all attorney fees and costs incurred herein in pursuing this action; and

5.     Any other relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Church Mutual demands a jury trial in this action.

Respectfully submitted,

Dated: July 14, 2021

s/ Kyle McConnell
Matthew Bloom (IL #6292410)
Kyle McConnell (IL #6311216)
Meagher & Geer, P.L.L.P.
216 North Jefferson Street, Suite 100
Chicago, IL 60661
Tel: 312-463-1045
mbloom@meagher.com
kmcconnell@meagher.com

and

Bradley M. Jones (MN #52413, WI #1010702, ND #04144)
Louise A. Behrendt (MN #201169)
Meagher & Geer, P.L.L.P.
33 South Sixth Street, Suite 4400
Minneapolis, Minnesota 55402
Tel: 612-338-0661
bjones@meagher.com
lbehrendt@meagher.com

*Attorneys for Plaintiff Church Mutual Insurance Company, now known as Church Mutual Insurance Company, S.I.*

14359444.1

21